# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

CWB SERVICES, LLC, a Missouri limited
liability company; ORION SERVICES, LLC, a
Kansas limited liability company; SANDPOINT
CAPITAL, LLC, a Nevis limited liability
company; SANDPOINT, LLC, a Delaware limited
liability company; BASSETERRE CAPITAL,
LLC, a Nevis limited liability company;
BASSETERRE CAPITAL, LLC, a Delaware
limited liability company; NAMAKAN
CAPITAL, LLC, a Nevis limited liability
company; NAMAKAN CAPITAL, LLC, a
Delaware limited liability company;
VANDELIER GROUP LLC, a Delaware limited
liability company; ST. ARMANDS GROUP LLC,
a Delaware limited liability company; ANASAZI
GROUP LLC, a Delaware limited liability
company; ANASAZI SERVICES LLC, a
Missouri limited liability company; LONGBOAT
GROUP LLC, also d/b/a CUTTER GROUP, a
Delaware limited liability company; OREAD
GROUP LLC, also d/b/a MASS STREET
GROUP, a Delaware limited liability company;
TIMOTHY A. COPPINGER, individually and as
a principal of one or more of the Corporate
Defendants; and FRAMPTON T. ROWLAND,
III, individually and as a principal of one or more
of the Corporate Defendants,

    Defendants.

CASE NO. _____

**COMPLAINT FOR PERMANENT
INJUNCTION AND OTHER
EQUITABLE RELIEF**

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b); the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j; and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r; to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, the appointment of a receiver, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); TILA and its implementing regulation Z, 12 C.F.R. § 1026; and EFTA and its implementing Regulation E, 12 C.F.R. § 1005.10; in connection with the offering or extension of credit in the form of high-fee, short-term "payday" loans, and the marketing, servicing and collection of those loans.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 1607(c), and 1693o(c).

3.     Venue is proper in this district under 28 U.S.C. § 1391(b), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces TILA, 15 U.S.C. §§ 1601-1666j, which establishes, *inter alia*, disclosure and calculation requirements for consumer credit transactions and advertisements, and EFTA, 15 U.S.C. §§ 1693-1693r, which provides individual consumer rights to participants in electronic fund transfer systems.

2

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, TILA, and EFTA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 1607(c), 1693o(c).

## DEFENDANTS

6.     Defendant CWB Services, LLC is a Missouri limited liability company that, from 2011 until approximately March 2014, had its principal place of business at 2114 Central Avenue, Suite 400, Kansas City, Missouri.  Its current principal place of business is at 6700 Squibb Road, Suite 200, Mission, Kansas.  CWB Services transacts or has transacted business in this district and throughout the United States.  At times material to this Complaint, acting alone or in concert with others, CWB Services has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

7.     Defendant Orion Services, LLC is a Kansas limited liability company with its principal place of business at 6700 Squibb Road, Suite 200, Mission Kansas.  Orion Services transacts or has transacted business in this district and throughout the United States.  At times material to this Complaint, acting alone or in concert with others, Orion Services has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

8.     Defendant Sandpoint Capital, LLC is a Nevis limited liability company that, from 2011 until approximately March 2014, had its principal place of business at 2114 Central Avenue, Suite 400, Kansas City, Missouri.  Its current principal place of business is at 6700 Squibb Road, Suite 200, Mission, Kansas.  Sandpoint Capital transacts or has transacted business in this district and throughout the United States.  At times material to this Complaint, acting

3

alone or in concert with others, Sandpoint Capital has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

9. Defendant Sandpoint, LLC is a Delaware limited liability company that, from 2011 until approximately March 2014, had its principal place of business at 2114 Central Avenue, Suite 400, Kansas City, Missouri. Its current principal place of business is at 6700 Squibb Road, Suite 200, Mission, Kansas. Sandpoint transacts or has transacted business in this district and throughout the United States. At times material to this Complaint, acting alone or in concert with others, Sandpoint has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

10. Defendant Basseterre Capital, LLC is a Nevis limited liability company that, from 2011 until approximately March 2014, had its principal place of business at 2114 Central Avenue, Suite 400, Kansas City, Missouri. Its current principal place of business is at 6700 Squibb Road, Suite 200, Mission, Kansas. Basseterre Capital transacts or has transacted business in this district and throughout the United States. At times material to this Complaint, acting alone or in concert with others, Basseterre Capital has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

11. Defendant Basseterre Capital, LLC is a Delaware limited liability company that, from 2011 until approximately March 2014, had its principal place of business at 2114 Central Avenue, Suite 400, Kansas City, Missouri. Its current principal place of business is at 6700 Squibb Road, Suite 200, Mission, Kansas. Basseterre Capital transacts or has transacted business in this district and throughout the United States. At times material to this Complaint, acting alone or in concert with others, Basseterre Capital has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

4

12.     Defendant Namakan Capital, LLC is a Nevis limited liability company that, from 2011 until approximately March 2014, had its principal place of business at 2114 Central Avenue, Suite 400, Kansas City, Missouri.  Upon information and belief, Namakan Capital's current principal place of business is at 6700 Squibb Road, Suite 200, Mission, Kansas. Namakan Capital transacts or has transacted business in this district and throughout the United States.  At times material to this Complaint, acting alone or in concert with others, Namakan Capital has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

13.     Defendant Namakan Capital, LLC is a Delaware limited liability company that, from 2011 until approximately March 2014, had its principal place of business at 2114 Central Avenue, Suite 400, Kansas City, Missouri.  Upon information and belief, Namakan Capital's current principal place of business is at 6700 Squibb Road, Suite 200, Mission, Kansas. Namakan Capital transacts or has transacted business in this district and throughout the United States.  At times material to this Complaint, acting alone or in concert with others, Namakan Capital has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

14.     Defendant Vandelier Group LLC is a Delaware limited liability company with its principal place of business at 7301 Mission Road, Suite 318, Prairie Village, Kansas.  Vandelier Group transacts or has transacted business in this district and throughout the United States.  At times material to this Complaint, acting alone or in concert with others, Vandelier Group has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

5

15. Defendant St. Armands Group LLC is a Delaware limited liability company with its principal place of business at 7301 Mission Road, Suite 318, Prairie Village, Kansas. St. Armands Group transacts or has transacted business in this district and throughout the United States. At times material to this Complaint, acting alone or in concert with others, St. Armands Group has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

16. Defendant Anasazi Group LLC is a Delaware limited liability company with its principal place of business at 7301 Mission Road, Suite 318, Prairie Village, Kansas. Anasazi Group transacts or has transacted business in this district and throughout the United States. At times material to this Complaint, acting alone or in concert with others, Anasazi Group has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

17. Defendant Anasazi Services LLC is a Missouri limited liability company with its principal place of business at 7301 Mission Road, Suite 318, Prairie Village, Kansas. Anasazi Services transacts or has transacted business in this district and throughout the United States. At times material to this Complaint, acting alone or in concert with others, Anasazi Services has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

18. Defendant Longboat Group LLC, also d/b/a Cutter Group ("Cutter Group"), is a Delaware limited liability company with its principal place of business at 7301 Mission Road, Suite 318, Prairie Village, Kansas. Cutter Group transacts or has transacted business in this district and throughout the United States. At times material to this Complaint, acting alone or in

6

concert with others, Cutter Group has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

19.     Defendant Oread Group LLC, also d/b/a Mass Street Group ("Mass Street Group"), is a Delaware limited liability company with its principal place of business at 7301 Mission Road, Suite 318, Prairie Village, Kansas.  Mass Street Group transacts or has transacted business in this district and throughout the United States.  At times material to this Complaint, acting alone or in concert with others, Mass Street Group has marketed, offered, serviced, made, or collected online payday loans throughout the United States.

20.     Defendant Timothy A. Coppinger is a principal of Defendants CWB Services, Orion Services, Sandpoint Capital, Sandpoint, Basseterre Capital (Nevis), Basseterre Capital (Delaware), Namakan Capital (Nevis), and Namakan Capital (Delaware).  At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Coppinger, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

21.     Defendant Frampton T. Rowland, III is a principal of Defendants Vandelier Group, St. Armands Group, Anasazi Group, Anasazi Services, Cutter Group, and Mass Street Group.  At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Rowland, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

22.     Defendants CWB Services, Orion Services, Sandpoint Capital, Sandpoint, Basseterre Capital (Nevis), Basseterre Capital (Delaware), Namakan Capital (Nevis), Namakan

7

Capital (Delaware), Vandelier Group, St. Armands Group, Anasazi Group, Anasazi Services, Cutter Group, and Mass Street Group (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices and other violations of law alleged below. Corporate Defendants have conducted the business practices described below through an interrelated network of companies that share addresses, telephone and facsimile numbers; commingle funds; and interact with consumers, payment processors, and other third parties from one centralized location. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Coppinger and Rowland have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

23.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

24.     Defendants purport to be in the business of offering, extending, servicing, or collecting online "payday loans" across the country. "Payday loans" are short-term, high-fee, unsecured loans, often made to consumers to provide funds in anticipation of an upcoming paycheck.

25.     Many consumers apply for various types of online loans through websites controlled by third-party "lead generators." To apply for a loan, the websites require consumers

8

to enter sensitive financial information, including checking account numbers. Lead generators then auction off consumers' sensitive financial information to the highest bidder.

26.     In numerous instances, Defendants purchase consumers' sensitive financial information from online lead generators or data brokers, and then use the data to make unauthorized payday loans to consumers who never consented to Defendants' loan terms and who may not have applied for a payday loan at all. Defendants deposit the purported "principal" to consumers' checking accounts without the consumer's authorization and then make unauthorized withdrawals from consumers' accounts every two weeks indefinitely.

27.     Defendants misrepresent to consumers that they authorized the loans, and are bound by the terms of the purported loan. To the extent that consumers attempt to contest the unauthorized transactions by reporting them to their banks, Defendants misrepresent to the banks that consumers authorized the transactions. In numerous instances, if consumers resort to closing their checking accounts to stop the unauthorized withdrawals from their accounts, Defendants misrepresent to third-party debt brokers, debt buyers, or debt collectors that consumers authorized the loans and are bound by their terms.

28.     As a result, in numerous instances, consumers who never agreed to Defendants' payday loans in the first place are trapped in a cycle of indefinite finance charges, or are forced to close their bank accounts and be subjected to abuse and harassment from third-party debt collectors.

29.     Even with respect to consumers who authorized Defendants' loans, Defendants engage in additional unlawful acts and practices by misrepresenting the terms of the loans, failing to provide required loan disclosures, and conditioning the extension of credit on pre-authorized electronic fund transfers from consumers' bank accounts.

9

### Defendants Access Consumers' Bank Accounts without Authorization and Misrepresent that Consumers Owe Payday Loans

30.     To access consumers' bank accounts without their authorization, Defendants purchase consumers' personal and financial information, including checking account and routing numbers, from third-party lead generators or data brokers. Defendants generally purchase two general categories of consumer leads: (a) data from consumers who submitted applications for online payday loans through third-party lead generator websites, but whose application was denied or who never consented to Defendants' loan terms; and (b) data from consumers who never applied for an online payday loan, but may have submitted personal information to a non-payday-related website.

31.     In numerous instances, Defendants represent to these consumers that they consented to the loan or authorized Defendants to make deposits to and withdrawals from their bank accounts, and therefore are obligated to pay the finance charges by: (a) depositing $200 to $300 into consumers' checking accounts, (b) withdrawing $60 to $90 finance charges from consumers' checking accounts every two weeks indefinitely; (c) telling consumers in telephone calls and e-mails that they consented to, and are obligated to repay, the loans, and (d) providing consumers with bogus applications, electronic transfer authorizations, or loan documents.

32.     In truth and in fact, in numerous instances, consumers did not authorize the deposits to, or withdrawals from, their accounts; did not consent to the loan or its terms; and therefore were not obligated to pay the finance charges.

33.     Defendants' misrepresentations about the purported payday loans also extend to third parties. In numerous instances, Defendants misrepresent to debt brokers, debt collectors, payment processors, or consumers' financial institutions that consumers authorized the payday

10

loans or authorized withdrawals from their bank accounts and are obligated to make payments according to the terms of the purported loans.

34.     For example, when consumers report to their banks that Defendants' withdrawals are unauthorized, Defendants often misrepresent to consumers' banks that consumers authorized the debits by transmitting, or causing others to transmit, copies of purported loan applications and withdrawal authorizations.  As a result, in numerous instances, consumers' banks deny consumers' requests to reverse Defendants' unauthorized debits.

35.     In truth and in fact, in numerous instances, the representations to consumers' banks are false because consumers did not authorize the loans or authorize Defendants to make withdrawals from their bank accounts.

36.     In other instances, consumers resort to closing their bank accounts to keep Defendants from making continued unauthorized transactions to and from their accounts.  In response, in numerous instances, Defendants sell or assign the supposed debt to third-party debt brokers or debt collectors, thereby representing that the consumer authorized the loan.  As a result, in numerous instances, third-party debt collectors abuse and harass consumers in attempting to collect the invalid debt.

37.     In truth and in fact, in numerous instances, these representations to debt brokers or debt collectors are false because consumers did not consent to the loan or authorize Defendants to make electronic debits from their bank accounts.

**Defendants Misrepresent the Costs of the Loans**

38.     As to those consumers who did consent to, or authorize, Defendants' loans, Defendants misrepresent the terms, cost, or repayment obligations of those loans.

11

39.     In particular, Defendants represent to consumers that the total payment for satisfying the payday loan is the sum of the principal borrowed plus a one-time stated finance charge.  In truth and in fact, this representation is false because Defendants assess indefinite biweekly finance charges to consumers and do not apply those funds to the principal of the loan.

40.     Defendants' "Loan Note and Disclosure" ("Loan Disclosure") states that the consumer's "**Total of Payments**" will be "[t]he amount you will have paid after you have made the scheduled payment," and constitutes the sum of a stated "**FINANCE CHARGE**" and the "**Amount Financed**."  It also states the "**ANNUAL PERCENTAGE RATE**" ("APR") for the loan.  These statements appear in bold and prominent text in a box set apart from the rest of the text of the Loan Disclosure.

41.     For example, the following excerpt from a Loan Disclosure states prominently that a consumer's loan would be due on May 25, 2012, the finance charge would be $90, the APR would be 782.14%, and the "TOTAL OF PAYMENTS" would be $390 (the amount borrowed plus the finance charge):

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. (e) | The dollar amount the credit will cost you. | The amount of credit provided to you on your behalf. | The amount you will have paid after you have made the scheduled payment. |
| **782.14%** | **$90** | **$300** | **$390** |

12

42. However, in small print and less prominent text, Defendants include additional disclosures that conflict with the box reprinted above, including:

> Your Payment Schedule will be: 1 payment of $390 due on 5/25/2012, if you decline* the option of refinancing your loan. If refinancing is accepted you will pay the finance charge of $90 only, on 5/25/2012. You will accrue new finance charges with every refinance of your loan. You have the option of paying down the loan. This means your account will be debited the finance charge plus $50.00 pay down. **This does not mean your loan will automatically pay down.**
>
> *To decline the option of refinancing you must sign the Account Summary page and fax it back to our office at least three business days before your loan is due.
> Security: The loan is unsecured.
> Prepayment: If you prepay your loan in advance, you will not receive a refund of any Finance Charge.
> (e) The Annual Percentage Rate is estimated based on the anticipated date the proceeds will be deposited to or paid on your account, which is _____ See below and your other contract documents for any additional information about prepayment, nonpayment and default.

(emphasis in original.)

43. In some instances, Defendants send consumers an "Account Summary" with information about the loan. Defendants also misrepresent the terms of the loan in this document by stating that the "Pay Off Amount Due" is a one-time payment of the principal plus one finance charge (for example, $390) and that the consumer has authorized Defendants "to debit the payoff amount due $390.00 from your account named above on your current due date."

44. In truth and in fact, Defendants withdraw only a finance charge on the due date – and will continue to withdraw a finance charge indefinitely unless consumers take affirmative action to stop the so-called refinancing of the loan. For example, instead of paying $390 for a $300 loan, some consumers have paid Defendants more than $1,000 in biweekly debits.

45. Defendants never disclose adequately the terms of the loan as actually structured, i.e., requiring consumers to pay indefinite finance charges without any of those payments reducing the principal balance.

13

46.     As a result, in numerous instances, Defendants extract significantly higher payments from consumers than they represent in the prominent terms of their Loan Disclosures or in other written or oral communications to consumers.

## Defendants Fail to Provide Consumers with Required Disclosures

47.     In addition to misrepresenting the terms of the loans, in numerous instances, Defendants fail to provide consumers with the requisite disclosures at all before depositing the principal to consumers' bank accounts.

48.     As a result, whether or not the consumer authorized the loan, Defendants fail to provide consumers with required disclosures about the purported loan's terms or with copies of their purported authorization to initiate electronic fund transfers from consumers' bank accounts.

## Defendants' Loans Require Pre-Authorized Electronic Transfers

49.     As to consumers who authorized Defendants' payday loans, Defendants' loan documents unlawfully condition the extension of that credit on pre-authorized electronic fund transfers from the consumers' bank accounts.

50.     For example, Defendants' loan notes state in part that "[o]n or after the day your loan comes due you authorize us to effect this payment by one or more ACH debit entries to your Account at the Bank."  In addition, Defendants' Authorization Agreement For Preauthorized Payment requires consumers to agree to "authorize us . . . to initiate one or more ACH debit entries (for example, at our option, one debit entry may be for the principal of the loan and another for the finance charge) to your Deposit Account indicated below for the payments that come due each pay period and/or each due date concerning every refinance, with regard to the loan for which you are applying."

14

## VIOLATIONS OF THE FTC ACT

51.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."  Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

52.     Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

## COUNT I

### Misrepresentations in Violation of Section 5 of the FTC Act

53.     In numerous instances, in connection with the marketing, offering, extension, servicing, or collection of purported payday loans, Defendants have represented, directly or indirectly, expressly or by implication, that consumers authorized the payday loan or authorized Defendants to make withdrawals from their bank accounts, and therefore were obligated to pay the finance charges associated with the purported loan.

54.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 53 of this Complaint, consumers had not authorized the payday loans, had not authorized Defendants to make withdrawals from their bank accounts, and therefore were not obligated to pay the finance charges associated with the purported loans.

55.     Therefore, Defendants' representations as set forth in Paragraph 53 of this Complaint are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

15

## COUNT II

## Misrepresentations about the Costs of the Loan in Violation of Section 5

56.     In numerous instances, in connection with the marketing, offering, extension, servicing, or collection of purported payday loans, Defendants have represented, directly or indirectly, expressly or by implication, that a consumer's total of payments will be equal to the amount financed plus a stated finance charge.

57.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 56 of this Complaint, the consumer's total of payments has been greater than the amount financed plus the stated finance charge.

58.     Therefore, Defendants' representations as set forth in Paragraph 56 of this Complaint are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

## Unfair Billing Practices in Violation of Section 5

59.     In numerous instances, in connection with the marketing, offering, extension, servicing, or collection of purported payday loans, Defendants have caused consumers' bank accounts to be debited without the consumers' express, informed consent.

60.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

61.     Therefore, Defendants' practices as set forth in Paragraph 59 of this Complaint constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

16

## <u>VIOLATIONS OF TILA AND REGULATION Z</u>

62.     Under TILA, 15 U.S.C. §§ 1601-1666j, and its implementing Regulation Z, 12 C.F.R. § 1026, creditors who extend "closed-end credit," as defined in 12 C.F.R. § 1026.2(a)(10), must comply with the applicable disclosure provisions of TILA and Regulation Z, including, but not limited to, Sections 1026.17 and 1026.18 of Regulation Z, 12 C.F.R. §§ 1026.17 and 1026.18.

63.     "Creditor" means a person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no contract.  12 C.F.R. § 1026.2 (a)(17). Defendants are creditors under TILA and Regulation Z because they extend consumer credit subject to a finance charge and the obligation is initially payable to them.

64.     "Closed-end credit" means consumer credit other than open-end credit, and "[o]pen-end credit" is defined as "consumer credit extended by a creditor under a plan in which: (i) the creditor reasonably contemplates repeated transactions; (ii) the creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) the amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid."  12 C.F.R. §§ 1026.2(a)(10) and (a)(20).  Defendants extend closed-end credit (as opposed to open-end credit) to consumers under TILA and Regulation Z because the loans do not meet all three criteria for open-end credit.

65.     Sections 121(a) and 128(b)(1) of TILA, 15 U.S.C. §§ 1631(a) and 1638(b), and Sections 1026.17(a) and (b) and Section 1026.18 of Regulation Z, 12 C.F.R. §§ 1026.17(a) and

17

(b) and 1026.18, require creditors of closed-end consumer credit transactions to disclose, before the credit is extended, among other things, the following about the loan: finance charge; annual percentage rate; number, amount, and due dates or period of payments scheduled to repay the total of payments (i.e., the "scheduled payment(s)"); and total of payments. These disclosures must reflect the terms of the legal obligation between the parties. 12 C.F.R. § 1026.17(c).

66.     Pursuant to Section 108(c) of TILA, 15 U.S.C. § 1607(c), every violation of TILA and Regulation Z constitutes a violation of the FTC Act.

**COUNT IV**

**Violations of TILA and Regulation Z**

67.     In numerous instances, Defendants have violated the requirements of TILA and Regulation Z by failing to disclose in writing before extending credit the following information in a manner reflecting the terms of the legal obligation between the parties:

        a.      the finance charge;

        b.      the annual percentage rate;

        c.      the payment schedule; and

        d.      the total of payments.

68.     Therefore, Defendants' practices as described in Paragraph 67 of this Complaint constitute violations of Sections 121 and 128 of TILA, 15 U.S.C. §§ 1631, 1638, and Sections 1026.17 and 1026.18 of Regulation Z, 12 C.F.R. §§ 1026.17 and 1026.18.

69.     The violations of TILA and Regulation Z set forth in Paragraph 67 of this Complaint constitute violations of Section 5 of the FTC Act.

18

## VIOLATIONS OF EFTA AND REGULATION E

70.     Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

71.     Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer.  The person that obtains the authorization shall provide a copy to the consumer."

72.     The Official Interpretation of Regulation E, Section 1005.10(b), 12 C.F.R. Part 1005 Supp. I at ¶ 10(b), cmt. 5, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization."

73.     Defendants are "persons" as this term is defined in Section 1005.2(j) of Regulation E, 12 C.F.R. § 1005.2(j).

74.     Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), provides that no person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers.

75.     Section 1005.10(e)(1) of Regulation E, 12 C.F.R. § 1005.10(e)(1), provides that "[n]o financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers, except for credit extended under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account."

19

76.     The Official Interpretation of Regulation E, Section 1005.10(e)(1), 12 C.F.R §

1005.10(e)(1)-1, Supp. I, provides that creditors may not require repayment of loans by

electronic means on a preauthorized recurring basis.

77.     Pursuant to Section 918(c) of EFTA, 15 U.S.C. § 1693o(c), every violation of

EFTA and Regulation E constitutes a violation of the FTC Act.

## COUNT V

### Failure to Obtain Authorization in Violation of EFTA/Regulation E

78.     In numerous instances, Defendants have debited consumers' bank accounts on a

recurring basis without:

    a.    obtaining a written authorization signed or similarly authenticated from

        consumers for preauthorized electronic fund transfers from the accounts;

        or

    b.    providing to the consumers a copy of a written authorization signed or

        similarly authenticated by the consumers for preauthorized electronic fund

        transfers from the consumers' accounts.

79.     Therefore, Defendants' practices as set forth in Paragraph 78 of this Complaint

constitute violations of Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b)

of Regulation E, 12 C.F.R. § 1005.10(b).

80.     The violations of EFTA and Regulation E set forth in Paragraph 78 of this

Complaint constitute violations of Section 5 of the FTC Act.

20

## COUNT VI

### Conditioning Credit on Preauthorized Electronic Fund Transfers
### in Violation of EFTA/Regulation E

81.     In numerous instances, in connection with payday loans offered to consumers,

Defendants have conditioned the extension of credit on recurring preauthorized electronic fund

transfers.

82.     Therefore, Defendants' practices as set forth in Paragraph 81 of this Complaint

constitute violations of Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), and Section

1005.10(e)(1) of Regulation E, 12 C.F.R § 1005.10(e)(1).

83.     The violations of EFTA and Regulation E set forth in Paragraph 81 of this

Complaint constitute violations of Section 5 of the FTC Act.

## CONSUMER INJURY

84.     Consumers have suffered and will continue to suffer substantial injury as a result

of Defendants' violations of the FTC Act, TILA and Regulation Z, and EFTA and Regulation E.

In addition, Defendants have been unjustly enriched as a result of their unlawful acts or

practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure

consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

85.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant

injunctive and such other relief as the Court may deem appropriate to halt and redress violations

of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable

jurisdiction, may award ancillary relief, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. §§ 53(b), and the Court's own equitable powers, requests that the Court:

A.      Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief,  including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access to business premises, and appointment of a receiver;

B.      Enter a permanent injunction to prevent future violations of the FTC Act; TILA and its implementing Regulation Z; and EFTA and its implementing Regulation E by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act; TILA and its implementing Regulation Z; and EFTA and its implementing Regulation E, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

22

Respectfully submitted,

JONATHAN E. NEUCHTERLEIN
General Counsel

Dated:  September 5, 2014          /s/  Rebecca M. Unruh
                                  Rebecca M. Unruh, DC Bar #488731
                                  Matthew J. Wilshire, DC Bar #483702
                                  Lisa A. Rothfarb, MD Bar
                                  Federal Trade Commission
                                  600 Pennsylvania Ave., N.W.
                                  Mail Stop CC-10232
                                  Washington, D.C. 20580
                                  202-326-3565 (Unruh)
                                  202-326-2976 (Wilshire)
                                  202-326-2602 (Rothfarb)
                                  Facsimile: 202-326-3768
                                  runruh@ftc.gov
                                  mwilshire@ftc.gov
                                  lrothfarb@ftc.gov

TAMMY DICKINSON
United States Attorney

Dated: September 5, 2014          /s/ Charles M. Thomas
                                  Charles M. Thomas, MO Bar #28522
                                  Assistant United States Attorney
                                  Charles Evans Whittaker Courthouse
                                  400 East Ninth Street, Room 5510
                                  Kansas City, MO  64106
                                  Telephone:  (816) 426-3130
                                  E-mail:  charles.thomas@usdoj.gov

                                  Attorneys for Plaintiff
                                  FEDERAL TRADE COMMISSION

23