**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> CWB SERVICES, LLC, *et al.,* <br><br> Defendants. | Case No. 4:14-cv-00783-DW |

### RECEIVER'S PRELIMINARY REPORT

Receiver, Larry E. Cook, reports to the Court as directed, respectfully stating:

### I. Introduction

1. The United States Federal Trade Commission ("FTC") initiated this enforcement action on September 5, 2014.

2. On September 9, 2014, this Court entered a Temporary Restraining Order (Docket No. 10) ("TRO") appointing Larry E. Cook as Receiver for the business activities of the Receivership Defendants (defined as the Corporate Defendants, as well as any other business related to the Defendants' lending or customer service business and which the Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants).

3. Over the past one and one-half weeks, the Receiver and his team of professionals have been working to effect the TRO by securing all business records of the Receivership Defendants, interviewing employees, and learning about the defendants' interconnected businesses—most of which center on short-term, high-interest, consumer

lending. The Receiver has taken possession of defendants' offices, books and records, including all electronically stored information ("ESI"). Throughout this process, the Receiver has worked cooperatively with the FTC on all appropriate matters, with each side keeping in mind the other party's legal position, responsibilities, and duties in this case.

4. The TRO also directs the Receiver to preserve assets of the defendants for the receivership estate. This included activity by the FTC in freezing approximately 34 corporate and individual accounts with an aggregate balance of approximately $1.7, net of released funds and accounts. Some of the frozen accounts were held in the name of non-defendant individuals and one non-defendant corporate account not related to consumer lending. As discussed further below, the Receiver has worked cooperatively with the FTC to release funds and accounts that were not related to defendants' consumer lending businesses.

5. The Receiver and his team addressed a number of issues related to the freeze of defendants' business activities, including former employees, landlords, and vendors.

## II. Steps Taken by Receiver to Implement Terms of the TRO

### A. Facilities

6. At approximately 9:50 a.m. September 10, 2014, the Receiver and his team, in conjunction with the FTC, the FTC's team of ESI contractors, and the US Marshal's Office simultaneously took possession of the defendants offices at 6700 Squibb Road, Suite 200, Mission, Kansas (offices for Coppinger, CWB Services, LLC; Orion Services, LLC; Sandpoint Capital, LLC; Sandpoint, LLC; Basseterre Capital, LLC; and Namakan Capital, LLC) (collectively, the "Coppinger Offices") and 7301 Mission

Road, Suite 318, Prairie Village, Kansas (offices for Rowland, Vandelier Group, LLC; St. Armands Group, LLC; Anasazi Group, LLC; Anasazi Services, LLC; Longboat Group, LLC d/b/a Cutter Group; and Oread Group, LLC d/b/a Mass Street Group) (collectively, the "Rowland Offices"). After taking control of the offices, the Receiver arranged for the office locks to be changed and invited the FTC and its team into the offices to begin copying all ESI and review of the defendants' books and records. Since taking control of the offices, only the Receiver and his team has had unsupervised access to the offices.

7. The Coppinger Offices is a well-equipped office space with five private offices, a conference room, and a large common area containing approximately 32 cubicles for telephone operators and numerous computers, servers, and printers. The Rowland Offices, on the other hand, is a modest two-room office with one laptop computer and several lateral files.

8. The Rowland Offices was not occupied when the Receiver served the TRO. The Coppinger Offices was in operation with approximately twelve employees present on the morning of September 10, 2014. The Receiver conducted a preliminary interview of the employees at the Coppinger Offices and then excused them from further services.

B. **Bank Accounts**

9. Simultaneously with service of the TRO on the offices, the FTC served various banks in order to freeze assets. The following chart summarizes accounts the Receiver is aware of and frozen:

## FTC v. CWB SERVICES, LLC, et al. Asset Freeze Log

| Institution Name | Account Name | Signatories | Account Number | Amount Frozen |
|---|---|---|---|---|
| **CORPORATE & RECEIVERSHIP ACCOUNTS** | | | | |
| Missouri Bank | CWB Services LLC | Timothy A. Coppinger | 2901 | $60,448.49 |
| Missouri Bank | CWB Services LLC | Timothy A. Coppinger | 1528 | $853.76 |
| Missouri Bank | Anasazi Services LLC | Frampton T. Rowland III | 583 | $92.73 |
| Missouri Bank | Canyon Road Holdings LLC | Frampton T. Rowland III | 575 | $55.86 |
| Missouri Bank | Cerrillos Road Holdings LLC | Frampton T. Rowland III | 1091 | $30.34 |
| Bank of America | Basseterre Capital LLC | Timothy A. Coppinger | 3696 | $14,359.17 |
| Bank of America | Orion Services LLC | Timothy A. Coppinger / Michael Birch | 3735 | $104,877.04 |
| Bank of America | Sandpoint Capital | Timothy A. Coppinger / Michael Birch | 7061 | $255,443.16 |
| Bank of America | Namakan Capital LLC | Stephen Coppinger | 1022 | $21,820.14 |
| Bank of America | Namakan Capital LLC | Stephen Coppinger | 1035 | $45,094.70 |
| BMO Harris | Vandelier Group LLC | Frampton T. Rowland III | 2974 | $1,455.06 |
| BMO Harris | Longboat Group LLC DBA Cutter Group | Frampton T. Rowland III | 2982 | $478.07 |
| BMO Harris | St Armands Group LLC | Frampton T. Rowland III | 3180 | $319.54 |
| BMO Harris | St Armands Group LLC | Frampton T. Rowland III | 9736 | $1,279.26 |
| Ameritas Univ. Life Policy | CWB Services LLC | (Cash surrender value) | | $34,988.47 |
| Commerce Bank | Transfer from Impact LLC to Receiver | | | $131,705.75 |
| | | **SUBTOTAL Receivership Frozen Assets** | | **$673,301.54** |
| **OTHER CORPORATE ACCOUNTS** | | | | |
| Commerce Bank | R&F, LLC (D/B/A Brooke Insurance Services) | Frampton T. Rowland III | 820 | $13,424.06 |
| Commerce Bank | R&F, LLC (D/B/A Brooke Insurance Services) | Frampton T. Rowland III | 7039 | $845.63 |
| Commerce Bank | R&F, LLC (D/B/A ABS Insurance Agency) | Frampton T. Rowland III | 5550 | $867.36 |
| **TIMOTHY A. COPPINGER** | | | | |
| Missouri Bank | Timothy A. Coppinger | Timothy A. Coppinger | 5946 | $0.00 |
| Missouri Bank | Timothy A. Coppinger | Timothy A. Coppinger | 1150 | $34,610.87 |
| Missouri Bank | Timothy A. Coppinger | Timothy A. Coppinger | 9148 | $483,346.70 |
| Missouri Bank | Jane M Coppinger Irrev Life Ins Trust | Timothy A. Coppinger (Trustee) | 6258 | $441.91 |
| Missouri Bank | Timothy Coppinger Trust Acct | Jane Coppinger | 6266 | $1,899.54 |
| Missouri Bank | DWTC Enterprises LLC | Timothy A. Coppinger/ David Wentz | 2774 | $238.92 |
| Missouri Bank | C2 Supply LLC | Timothy A. Coppinger / Michael Birch | 4270 | $225.51 |
| Wells Fargo | Running Girls LLC | Timothy A. Coppinger | 5980 | $265.00 |
| Ameritas | Timothy A. Coppinger 401(k) | Timothy A. Coppinger | AA02 | $266,140.39 |
| Ameritas | Timothy A. Coppinger IRA | Timothy A. Coppinger | 3919 | $143,075.96 |
| UBS / CollegeBoundFund | Timothy A. Coppinger FBO Courtney Coppinger | Timothy A. Coppinger | 1780 | $30,442.24 |
| UBS / CollegeBoundFund | Timothy A. Coppinger FBO [Minor] Coppinger | Timothy A. Coppinger | 1782 | $29,246.69 |
| UBS / CollegeBoundFund | Timothy A. Coppinger FBO [Minor] Coppinger | Timothy A. Coppinger | 1781 | $29,171.67 |
| PMF Investment Club | | (Approximate investment) | | $24,000.00 |
| Missouri Bank | Courtney Coppinger Student Savings | Courtney Coppinger / Timothy A. Coppinger | 9044 | $10,948.81 |
| Missouri Bank | Courtney Coppinger Student Checking | Courtney Coppinger / Timothy A. Coppinger | 1393 | $39.12 |
| Missouri Bank | [Minor] Coppinger Student Savings | [Minor] Coppinger / Timothy A. Coppinger | 9052 | $1,443.76 |
| Missouri Bank | [Minor] Coppinger Student Savings | [Minor] Coppinger / Timothy A. Coppinger | 9087 | $702.71 |
| | | **SUBTOTAL Coppinger Frozen Assets** | | **$1,043,105.15** |
| **FRAMPTON T. ROWLAND III** | | | | |
| Commerce Bank | Frampton T. Rowland III, Kelly Rowland | Frampton T. Rowland III / Kelly Rowland | 4871 | $1,031.52 |
| Commerce Bank | Frampton T. Rowland III | Frampton T. Rowland III | 1308 | $785.57 |
| Missouri Bank | Frampton T. Rowland III | Frampton T. Rowland III | 1024 | $12,397.05 |
| Missouri Bank | Frampton T. Rowland III | Frampton T. Rowland III | 1377 | $248.50 |
| Commerce Bank | Susan Rowland | Susan Rowland / Frampton T. Rowland | 5989 | $2,828.19 |
| | | **SUBTOTAL Rowland Frozen Assets** | | **$14,462.64** |
| | | **TOTAL FROZEN ASSETS:** | | **$1,730,869.33** |

10. The $1.7 million sum is net of the following accounts which the Receiver and FTC have released back to defendants and non-defendant entities as follows:

4

22217190v1

a. R&F, LLC accounts at Commerce Bank. These were frozen on account of individual defendant Rowland being an authorized signer on the accounts. Upon review of the deposit and withdrawal history for the past year on these accounts, the Receiver determined these accounts were used for an insurance agency unrelated to consumer lending.

b. Susan Rowland account at Commerce Bank. This account was frozen on account of individual defendant Rowland being an authorized signer on the account. Upon review of the deposit and withdrawal history for the past year on this account, the Receiver and FTC determined this account was Rowland's mother's account funded only by monthly social security deposits.

c. Minor and college-age Coppinger children accounts for which defendant Coppinger was an authorized signer on the accounts, the Receiver determined these accounts were not directly funded with assets of the Receivership Defendants and were released back to the student Coppingers.

d. Impact, LLC account at Commerce Bank on which defendant Coppinger was an authorized signer. This was a business account for an interior furnishings company unrelated to consumer lending. The Receiver and FTC negotiated a return of "seed" money in the amount of $50,000 which Sandpoint Capital previously transferred to Impact plus $81,202.75 in reported 2013 distributions owed to defendant Sandpoint Capital for a total of $131,707.75 to the Receiver and a release of the balance back to Impact so that it could resume its interior furnishing business.

### C. Interviews

11. The Receiver has conducted multiple interviews of the Coppinger Offices employees, including the operations manager and in-house accountant. The employees have been cooperative with the Receiver.

12. From September 10-12, the Coppinger Offices computer network was off-line while the FTC's contractors copied the ESI. During the week of September 15-19, the Receiver's team worked to bring the Coppinger Offices network back up so that the employees could provide the Receiver access to the accounting software and data. The defendants' outside CPA was out of town the week of September 15, 2014 and was accordingly unavailable to be interviewed.

13. In addition, the Receiver cooperated with the FTC and individual defendants to provide access to the offices so that the individual defendants could complete their financial reports to the FTC and work out an agreed to preliminary injunction and budget for counsel fees and living expenses. In an effort to understand defendants' financial transactions, the Receiver wants to first interview the external CPA and then interview the individual defendants. The Receiver anticipates this occurring the week of September 22, 2014.

### D. ESI

14. The Receiver has received approximately 87 gigabytes of e-mails from the FTC's ESI contractors which the Receiver's team is still in the process of consolidating and formatting into a searchable format. From past experience, the Receiver has learned

6

that e-mails are critical to investigating and proving claims in litigation. The 87 gigabytes of e-mails received relates only to the Coppinger Offices. The Rowland Offices did not utilize its own email server.

### E. Compliance with TRO

15. After securing the business offices and completing a basic review of the business operations, the Receiver suspended all activities at the Coppinger Offices by excusing all personnel. The Receiver disconnected remote access to the Coppinger Offices computer servers. The Receiver further took control of the corporate defendants' post office boxes.

## III. Value of All Liquidated and Unliquidated Assets and Liabilities of Receivership Defendants

16. At this preliminary stage, the Receiver has not yet compiled a value of the assets and liabilities of the Receivership Defendants. The Receiver has scheduled a meeting with the Receivership Defendants' CPA for the morning of September 25, 2014 and will be in a position to provide values in the next Receiver's Report.

17. The Receiver has not yet completed a full review of all of the Receivership Defendants' business operations. However, an overview, based upon the Receiver's current understanding, is as follows:

18. CWB Services, LLC: provided payday loan origination and customer service for the payday loans held by the other corporate defendants, with the exception of CWB's successor, Orion Services, LLC. CWB Services continued collection activity on the consumer accounts through September 2014. CWB Services, LLC also directed delinquent payday loans to the lenders for collection.

19. Orion Services, LLC: provided consumer loan origination and customer service for the consumer loans held by non-defendant Sakoagan Finance, Inc. d/b/a Blue Pine Lending (and other non-defendants Red, White, Green, and Yellow Pine Lending). The consumer loans processed by Orion Services are reported to be installment loans, rather than more traditional "payday" loans.

20. The Receiver has compiled an inventory of the physical assets of the Receivership Defendants which is attached hereto as **Schedule 1**.

### IV. Receiver's Next Steps

#### A. Valuation of Assets and Liabilities

21. The Receiver and his team continue to work to determine the value of all liquidated and unliquidated assets and liabilities of the Receivership Defendants. The Receiver, in conjunction with the FTC, has frozen approximately $1.7 million in corporate and individual accounts, net of funds released to unrelated businesses and individuals.

#### B. Prevent Diminution in Value of Assets

22. The Receiver is working to return the Rowland Offices to individual defendant Rowland to relieve the receivership estate of the rent burden for this office. In addition to receivership defendant businesses, defendant Rowland operated what the Receiver believes is unrelated insurance agency business. The Receiver intends to remove receivership defendant books and records from the Rowland Offices and return it to individual defendant Rowland.

23. The Receiver has also been working with the landlord for the Coppinger Offices to minimize the rent expense for that office.

### C. Pursue Receivership Assets from Third Parties

24.     Upon completion of interviewing the Receivership Defendants' outside CPA and principals the week of September 22, 2014, the Receiver will be in a better position to identify and assess recovery of receivership assets from third parties.

### D. Whether Receivership Defendants' Businesses Can Be Operated Legally and Profitably

25.     The Receiver has had less than two weeks to review all of the receivership defendants' business activities. The receivership defendants' violations of the FTC Act, TILA, Regulation Z, EFTA, and Regulation E as alleged by Plaintiff and confirmed by the Receiver's on-site review of the receivership defendants' offices, could, **in theory**, be corrected. However, it does not appear to the Receiver that these businesses could then be operated profitably. From the unaudited financial statements the Receiver has reviewed to date, the companies were operating at a loss in 2014. As recently as July, 2014, defendant Coppinger e-mailed the operations manager of CWB Services/Orion Services that he could not offer employees a raise or bonus because the companies were still operating at an $8,000 monthly loss, drawing down cash reserves. As recently as August, 2014, the State of Minnesota issued a cease and desist letter to defendant CWB Services, LLC.

26.     As to Orion Services, LLC, the employees asserted to the Receiver that it had a new business model of originating, servicing, and collecting installment loans for the Pine Lending companies. The Receiver is not in a position to opine on the legality of this operation. Orion Services, LLC's business operations were allegedly of a different type than the illegal conduct alleged by Plaintiff FTC as to the other receivership

defendants. However, Orion Services, LLC was operating at a loss. Furthermore, Orion Services, LLC used the same facilities, officers, and employees as the other receivership defendants and as a common-enterprise, may well be found liable for any consumer redress the FTC may seek.

27. In sum, the Receiver has made a good faith determination that the receivership defendants businesses cannot be operated **both** legally and profitably.

E. **Additional Matters Receiver Believes Should Be Brought to the Court's Attention**

28. The Receiver has filed for an Employee Identification Number with the IRS, and opened a receivership checking and money market account at Commerce Bank Kansas City, Missouri.

29. The Receiver has filed IRS Form 56, Notice Concerning Fiduciary Relationship for the receivership corporate defendants.

Dated: September 22, 2014.

                                           Respectfully submitted,

LATHROP & GAGE LLP

By: /s/ *Brian M. Holland*
Brian M. Holland  MO # 51307
2345 Grand Blvd, Suite 2400
Kansas City, MO 64108
Telephone: 816.292.2000
Telecopier: 816.292.2001
Email: bholland@lathropgage.com

Attorneys for Larry E. Cook,
Receiver

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of September, 2014, I electronically filed the foregoing document, with the Clerk of the Court for the Western District of Missouri by using the CM/ECF system which will send a notice of electronic filing to all parties participating in the Court's CM/ECF system.

/s/ *Brian M. Holland*
An Attorney for Larry E. Cook,
Receiver