IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| FEDERAL TRADE COMMISSION, | Case No. 4:14-cv-00783-DW |
|---|---|
| Plaintiff, | |
| v. | |
| CWB SERVICES, LLC, *et al.*, | |
| Defendants. | |

### RECEIVER'S SECOND REPORT

Receiver, Larry E. Cook, reports to the Court as directed, respectfully stating:

### I. Introduction

1. The United States Federal Trade Commission ("FTC") initiated this enforcement action on September 5, 2014.

2. On September 9, 2014, this Court entered a Temporary Restraining Order (Docket No. 10) ("TRO") appointing Larry E. Cook as Receiver for the business activities of the Receivership Defendants (defined as the Corporate Defendants, as well as any other business related to the Defendants' lending or customer service business and which the Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants).

3. On September 23, 2014, the Court entered a Stipulated Preliminary Injunction with An Asset Freeze, Appointment of a Receiver, and Other Equitable Relief (Docket No. 34) ("PI Order"). The PI Order directs the Receiver to file a Report by September 23, 2014.

4. Over the past thirty days, the Receiver and his team of professionals have been working to effect the TRO by securing all business records of the Receivership Defendants, interviewing employees, and learning about the defendants' interconnected businesses—most of which center on short-term, high-interest, consumer lending. The Receiver has taken possession of defendants' offices, books and records, including all electronically stored information ("ESI"). Throughout this process, the Receiver has worked cooperatively with the FTC on all appropriate matters, with each side keeping in mind the other party's legal position, responsibilities, and duties in this case.

5. The TRO also directs the Receiver to preserve assets of the defendants for the receivership estate. This included activity by the FTC in freezing approximately 34 corporate and individual accounts with an aggregate balance of approximately $1.7, net of released funds and accounts. Some of the frozen accounts were held in the name of non-defendant individuals and one non-defendant corporate account not related to consumer lending. As discussed further below, the Receiver has worked cooperatively with the FTC to release funds and accounts that were not related to defendants' consumer lending businesses.

6. The Receiver and his team addressed a number of issues related to the freeze of defendants' business activities, including former employees, landlords, and vendors.

## II. Steps Taken by Receiver to Implement Terms of the TRO

### A. Facilities

7. The Receiver has taken exclusive possession of the defendants offices at 6700 Squibb Road, Suite 200, Mission, Kansas (offices for Coppinger, CWB Services,

LLC; Orion Services, LLC; Sandpoint Capital, LLC; Sandpoint, LLC; Basseterre Capital, LLC; and Namakan Capital, LLC) (collectively, the "Coppinger Offices") and 7301 Mission Road, Suite 318, Prairie Village, Kansas (offices for Rowland, Vandelier Group, LLC; St. Armands Group, LLC; Anasazi Group, LLC; Anasazi Services, LLC; Longboat Group, LLC d/b/a Cutter Group; and Oread Group, LLC d/b/a Mass Street Group) (collectively, the "Rowland Offices").

8. The Receiver has maintained the Coppinger Offices and is paying the rent for this space. The Coppinger Offices contain a large number of records and servers to which the Receiver requires continued access. The Receiver is also cooperating with defendant Coppinger and his counsel as they request access to the records and data at the Coppinger Offices to provide information and reports to the FTC. The Receiver presently anticipates surrendering the Coppinger Offices at the end of November 2014. The Receiver is evaluating a more cost-effective manner of storing the paper records and ESI (including maintaining the server databases at a different location).

9. The Receiver has copied and removed all of the Rowland entity data and information from the Rowland Offices which contained considerably less volume than the Coppinger Offices. The Receiver has returned possession of the Rowland Offices to defendant Rowland to eliminate the rent expense of the Rowland Offices from the Receivership Estate.

B. **Bank Accounts**

10. The Receiver has opened a Receivership Account at Commerce and is in the process of transferring the corporate entity funds to this account. As of the filing of this Second Report, the Receivership Account has a balance of $79,446.14. The

Receiver has also received cashier's checks from Bank of America totaling $441,594.21 to be deposited this week as follows:

| Institution Name | Account Name | Account Number | Amount |
|---|---|---|---|
| Bank of America | Basseterre Capital LLC | 3696 | $14,359.17 |
| Bank of America | Orion Services LLC | 3735 | $104,877.04 |
| Bank of America | Sandpoint Capital | 7061 | $255,443.16 |
| Bank of America | Namakan Capital LLC | 1022 | $21,820.14 |
| Bank of America | Namakan Capital LLC | 1035 | $45,094.70 |
| | | | $441,594.21 |

In addition, Missouri Bank is initiating a wire transfer for the corporate defendant accounts as follows:

| Institution Name | Account Name | Amount |
|---|---|---|
| Missouri Bank | CWB Services LLC | $60,448.49 |
| Missouri Bank | CWB Services LLC | $853.76 |
| Missouri Bank | Anasazi Services LLC | $92.73 |
| Missouri Bank | Canyon Road Holdings LLC | $55.86 |
| Missouri Bank | Cerrillos Road Holdings LLC | $30.34 |
| | Total | $61,481.18 |

Finally, BMO Harris Bank is transferring the corporate defendant accounts at BMO Harris as follows:

22402282v1

| Bank | Entity | Amount |
|---|---|---|
| BMO Harris | Vandelier Group LLC | $1,455.06 |
| BMO Harris | Longboat Group LLC DBA Cutter Group | $478.07 |
| BMO Harris | St Armands Group LLC | $319.54 |
| BMO Harris | St Armands Group LLC | $1,279.26 |
| | **Total** | **$3,531.93** |

11. The total Receivership deposits, once these transfers are complete will be $586,053.46.

12. The Receiver has paid the following expenses from Receivership Assets to date:

| Description | Payee | Amount |
|---|---|---|
| Employee Payroll | Employees | $ 23,607.89 |
| Employee PTO | Employees | $ 20,183.61 |
| Paycor processing | Paycor | $ 324.97 |
| Rent--6700 Squibb | Oddo Dvlp. | $ 7,812.00 |
| | **Total** | **$ 51,928.47** |

13. The employee payroll was made pursuant to Court Order. The final paid time off ("PTO") payment to employees was made following investigation into the Kansas Wage Payment Act and regulations which require payment of earned, accrued paid time off upon termination of an employee. In addition, the former employees continue to provide the Receiver assistance when needed in accessing electronic records.

14. The balance of the defendant accounts frozen upon entry of the TRO represent accounts in the individual defendant's name which remain frozen. The Receiver anticipates filing one or more motions for turnover of property of the Receivership Estate after he has determined the final amount of defendant entity funds transferred to various individuals and entities.

5

22402282v1
Case 4:14-cv-00783-DW   Document 56   Filed 10/23/14   Page 5 of 10

### C. Stopping Collection From Consumer Borrowers

15. The TRO and PI Order both require the cessation of collection of consumer loans. To that end, the Receiver has worked with the FTC to contact numerous third-party debt collectors to stop the collection of consumer loans. In some cases, the third-party debt collectors were collecting on behalf of the defendant entities. In other cases, the third party debt collectors were attempting to collect consumer loan accounts which had been sold to non-defendant entities. The Receiver believes that as of the filing of this Second Report, all collection of consumer loans by the defendant entities and their agents has ceased.

### III. Value of All Liquidated and Unliquidated Assets and Liabilities of Receivership Defendants

16. At this stage, the Receiver has not yet compiled a value of the assets and liabilities of the Receivership Defendants. The largest "asset" of the defendant entities is the portfolio of consumer loans which the Receiver is prohibited from collecting.

17. The Receiver has conducted interviews of defendants and their CPA, reviewed numerous financial statements and bank accounts, and subpoenaed additional bank records. In many cases, the initial bank records reviewed provide evidence of transfers to additional bank accounts which then requires a follow-up subpoena.

18. In addition, the unaudited financial statements obtained by the Receiver require back-up reconciliation with the actual bank records. In some cases, the financial statements do not match the actual cash transfers (e.g., distributions reported on K-1s do not match the actual cash distributions made to partners of the various entities). This will require additional bank record subpoena and review.

19. While the Receiver is still completing the itemization of transfers from defendant entities to third parties, the following is a synopsis of his findings to date:

- A. Total transfers by Rowland entities to investors from 2011 to 2013: $7,899,574.89.

- B. Total transfers by Rowland entities to partners from 2011 to 2013: $13,401,902

- C. Total transfers by Coppinger entities to investors from 2009 to 2013: $2,035,158.14

- D. Total transfers by Coppinger entities to partners from 2009 to 2013: $4,583,827.

20. The Receiver has been working with the FTC and defendant Coppinger and his counsel to sell defendant Coppinger's lake house. The parties are in negotiation for a contract for purchase which is anticipated to close December 1, 2014. The parties are working through various mechanic lien claims for improvements to the property.

21. Although it does not appear collection of the consumer loan portfolios held by the defendant entities may be collected, the Receiver has identified the scope of number of consumer accounts involved and summarized as follows:

| Entity | Number of Consumer Loan Accounts |
|---|---|
| Anasazi Group | 187,842 |
| Longboat Group d/b/a Cutter | 159,599 |
| St. Armands Group | 170,243 |
| Vandelier Group | 145,091 |
| Oread Group d/b/a Mass Street Group | 143,553 |
| Sandpoint Capital | 403,249 |
| Namakan Capital | 179,065 |
| Basseterre Capital | 31,784 |
| | 1,420,426 |

## IV. Receiver's Next Steps

### A. Valuation of Assets and Liabilities

22. The Receiver and his team continue to work to determine the value of all liquidated and unliquidated assets and liabilities of the Receivership Defendants. Because the largest "asset" of the Receivership Defendants consists of consumer loan portfolios which cannot be collected or sold, the Receiver anticipate the largest source of potential recovery of assets will be in recovery of profits and other transfers made to third parties. This will require review and analysis of additional bank records.

23. The Receiver anticipates engaging a forensic accountant once all of the bank records have been obtained.

### B. Prevent Diminution in Value of Assets

24. The Receiver Anticipates surrendering the Coppinger Offices space to the landlord by the end of November 2014 to minimize the rent expense.

### C. Additional Matters Receiver Believes Should Be Brought to the Court's Attention

25. At the September 23, 2014 Hearing on entry of the PI Order, the Court asked the Receiver to investigate the FTC's summary of gross receipts and disbursements of consumer funds from November 2012 to September 2013 for all defendant entities. Specifically, the Declaration of Michael B. Goldstein, PX 35, Page 39, Paragraph 126 provided: "Over just one eleven-month period from November 2012 through September 2013, Defendants issued $28 million in payday 'loans' to consumers, and, in return, extracted more than $46.5 million." The Court asked the Receiver to identify where the $18.5 million difference went.

26. Tracing the precise dollar amount is difficult because of the number of entities involved, the number of bank accounts involved, and the timing of the posting of credits and debits into the defendant accounts.

27. The Receiver's summary is attached hereto as **Exhibit A**. The Receiver notes his review of the financial records resulted in slightly different figures. Whereas the FTC's total consumer funds collected was $46.9 million, the Receiver found $47.3 million. And while the FTC calculated total funding of consumer loans at $28.4 million, the Receiver identified $29.4 million, net of delinquent loan expense charges (consumer loans written off due to non-payment). The Receiver further identified $7.5 million in "lead costs" paid to eData for leads on the consumer accounts and "overhead expenses" of $5.3 million, leaving a combined "profit" of $531,270.76.

28. To directly answer the Court's question:

```
 $17.9 million--difference in consumer loan receipts and disbursements
 -$4.6 million—bad loan write-offs
 -$7.5 million—lead purchase costs
 -$5.3 million "overhead expenses"
 -$0.5 million "profit"
 $0
```

29. The Receiver notes that the "overhead expenses" figure includes millions of dollars transferred back to defendant entities as management fees and nearly $300,000 in interest to investors. A detail of the "overhead expenses" for this time period is attached as **Exhibit A-1**. Accordingly, the "profit" reflected by the financial statements should not be interpreted as total benefit to the defendant entities. The purpose of this accounting is to answer the Court's inquiry as to where the difference in consumer loan receipts and disbursements went.

Dated: October 23, 2014.

Respectfully submitted,

LATHROP & GAGE LLP

By: /s/ *Brian M. Holland*
Brian M. Holland  MO # 51307
2345 Grand Blvd, Suite 2400
Kansas City, MO 64108
Telephone: 816.292.2000
Telecopier: 816.292.2001
Email: bholland@lathropgage.com

Attorneys for Larry E. Cook,
Receiver

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October 2014, I electronically filed the foregoing document, with the Clerk of the Court for the Western District of Missouri by using the CM/ECF system which will send a notice of electronic filing to all parties participating in the Court's CM/ECF system.

/s/ *Brian M. Holland*
An Attorney for Larry E. Cook,
Receiver