IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>CWB SERVICES, LLC, *et al.*,<br><br>    Defendants. | Case No. 4:14-cv-00783-DW |

## RECEIVER'S QUARTERLY REPORT PURSUANT TO L.R. 66.1(B)

Receiver, Larry E. Cook, pursuant to L.R. 66.1(b), files his Quarterly Report to the Court, respectfully stating as follows:

The Federal Trade Commission ("FTC") initiated this enforcement action on September 5, 2014. On that same date, this Court entered a Temporary Restraining Order (Docket No. 10) ("TRO") appointing Larry E. Cook as Receiver for the business activities of the Receivership Defendants (defined as the Corporate Defendants, as well as any other business related to the Defendants' lending or customer service business and which the Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants). On September 23, 2014, the Court entered a Stipulated Preliminary Injunction with An Asset Freeze, Appointment of a Receiver, and Other Equitable Relief (Docket No. 34) ("PI Order"). Under L.R. 66.1(b), I submit this Quarterly Report to advise the Court of the status of this Receivership Estate:

## I. Closing of the Receivership Site

As previously reported, the Receiver took exclusive possession of the defendants offices at 6700 Squibb Road, Suite 200, Mission, Kansas (offices for Coppinger, CWB Services, LLC; Orion Services, LLC; Sandpoint Capital, LLC; Sandpoint, LLC; Basseterre Capital, LLC; and Namakan Capital, LLC) (collectively, the "Coppinger Offices"). In order to minimize expense going forward, the Receiver surrendered the Coppinger Offices back to the landlord effective December 31, 2014. The Receiver and his counsel have retained hard copies of documents and all servers which are being stored at Receiver's counsel's office at no charge to the Receivership Estate. These documents and electronic records are being stored and available for production pursuant to the TRO and PI Order which appoint the Receiver the records custodian.

As to 7301 Mission Road, Suite 318, Prairie Village, Kansas (offices for Rowland, Vandelier Group, LLC; St. Armands Group, LLC; Anasazi Group, LLC; Anasazi Services, LLC; Longboat Group, LLC d/b/a Cutter Group; and Oread Group, LLC d/b/a Mass Street Group) (collectively, the "Rowland Offices"), the relevant physical records were copied and removed and the office surrendered back to defendant Rowland because non-defendant business unrelated to consumer lending was also transacted at that office. Accordingly, the Receivership Estate is not incurring charges on account of the Rowland Offices.

## II. Financial Summary of the Receivership Defendants

The Receiver and his team of attorneys and accountants have nearly completed the investigation and accounting of the corporate receivership defendants' financial activity. The Receiver notes that the following summary is not audited, but is based upon financial statements and review of the receivership defendants' bank records. The

Receiver estimates a complete audited financial summary of all receivership defendants would cost in excess of $250,000 due to the number of entities and bank accounts involved. The Receiver does not believe at this point that such an audit would result in a net benefit to the Receivership estate in terms of additional recovery of assets.

The following definitions apply to this financial summary:

**"Coppinger Entities"** means corporate defendants CWB Services, LLC and Orion Services, LLC (each of which were serving entities and each owned by defendant Tim Coppinger and his wife Jane), together with the Coppinger Lending Entities as defined below.

**"Coppinger Lending Entities"** means corporate defendants Sandpoint Capital, LLC, Basseterre Capital, LLC (each owned by Defendant Tim Coppinger and his wife Jane) together with Namakan Capital, LLC (controlled by Defendant Tim Coppinger, but owned by Tim's brother Steve Coppinger and his wife Erica). Sandpoint, Basseterre, and Namakan each made payday loans to consumers.

**"DNA/Rowland Lending Entities"** means corporate defendants Vandelier Group, LLC, ST. Armands Group, LLC, Anasazi Group, LLC, Longboat Group, LLC, and Oread Group, LLC (each a lending entity owned 33.3% by Defendant Ted Rowland and 66.7% by DNA Investments, LLC).

 A. **Coppinger Entities:**

  1. <u>**CWB Services, LLC**</u>

CWB Services, LLC provided operational services for the lending entities, including call center/customer service staff, processing new consumer loans and processing consumer payments to the lending entities. CWB Services, LLC operated

3

23770648v2
Case 4:14-cv-00783-DW   Document 158   Filed 05/20/15   Page 3 of 16

from 2011 to 2013 during which time it generated $12.8 million in revenue (primarily from charging a management fee to the lending entities) and paid $11.2 million in expenses (primarily for wages/payroll taxes, employee benefits, rent, utilities, and professional fees). A copy of CWB Services, LLC's consolidated income statement for 2011 to 2013 is attached hereto as **Exhibit A**. Between 2011 and 2013, CWB Services, LLC reported a net profit of $1.7 million.

Between 2011 and 2013, Defendant Tim Coppinger withdrew $1.3 million in membership distributions from CWB Services, LLC in addition to $452,000 in W-2 wages from CWB Services, LLC.

Between 2007 and 2011, Clearwater Bay Marketing, LLC served the same function as CWB Services, LLC (CWB Services was essentially a name change from Clearwater Bay Marketing, LLC). Although Clearwater Bay Marketing is not a named defendant, it meets the definition of Receivership Defendant in this case insofar as Clearwater Bay Marketing, LLC was owned in whole or part by Defendant Tim Coppinger and was involved in the operational services of the lending entities. A copy of Clearwater Bay Marketing, LLC's consolidated income statement for 2007 to 2011 is attached hereto as **Exhibit B**. Between 2007 and 2011, Clearwater Bay Marketing, LLC generated $11.1 million in revenue, incurred $4.8 million in lead costs for a gross profit of $6.3 million. Clearwater Bay Marketing, LLC booked $5.2 million in additional expenses (primarily wages, benefits, and investor payments) for a net income of $1.7 million.

Between 2007 and 2011, Defendant Tim Coppinger withdrew $269,178 in owner distributions and $646,500 in W-2 wages from Clearwater Bay Marketing, LLC.

## 2. Orion Services, LLC

Orion Services, LLC operated in 2014 as the successor to CWB Services, LLC. By 2014, the call service center/customer service people were employees of Orion Services rather than CWB Services, LLC. A copy of Orion Services, LLC's income statement for January 1, 2014 through July 31, 2014 is attached hereto as **Exhibit C**.

## 3. Sandpoint Capital, LLC

Sandpoint Capital, LLC was the largest and longest-running Coppinger lending entity having operated from February of 2007 until closed by the Receiver in September of 2014. From a review of Sandpoint's loan management software, the Receiver has determined that during the 2007 to 2014 time period, Sandpoint issued $23.98 million in loans to 81,771 consumers and collected $40.2 million in fees, interest, and principal from consumers resulting in a $16.2 million gross profit.

A copy of Sandpoint Capital, LLC's consolidated income statement for 2007 through 2013 (the last complete year available) is attached as **Exhibit D**. Sandpoint's income statement includes revenue and expenses not directly related to its consumer lending business and therefore the income statement figures are slightly different than the loan management software figures. In addition, for all lending entities, the consolidated income statement reflects actual cash basis of revenue received vs. the loan management software occasionally reports a "pull" which is a collection from a consumer, which was ultimately rejected or returned. Accordingly, for all lending entities, the loan management software report of gross collections will be slightly higher than the income statement report of revenue pulls. After extensive review of these minor discrepancies,

the Receiver and his team concluded the cost of reconciling the discrepancies would exceed any benefit to the Receivership Estate.

The net profit for Sandpoint through the end of 2013 was $2.04 million. During that same period, Defendant Tim Coppinger withdrew a total of $2.4 million in owner distributions from Sandpoint.

4. **Basseterre Capital, LLC**

Basseterre Capital, LLC was the smallest and shortest-running lending entity having operated as a lending entity form late December of 2012 until mid-October of 2013. During that time, Bassetterre's loan management software reports Basseterre issued $287,600 in loans to 628 consumers and collected $425,843 in fees, interest, and principal resulting in a gross profit of $138,243.

A copy of Basseterre Capital, LLC's one and only income statement (reflecting only first ten months of 2013) is attached as **Exhibit E**. Exhibit E reflects a net profit of $0 due to a capital distribution (owner distribution) in the amount of $213,802.49 to Defendant Tim Coppinger in 2013.

5. **Namakan Capital, LLC**

Namakan Capital, LLC operated as a lending entity from August 2008 until mid-October 2013. During that time, Namakan issued $9.5 million in loans to 33,052 consumers and collected $13.5 million in fees, interest, and principal, resulting in a gross profit of $4 million.

A copy of Namakan Capital, LLC's consolidated income statement for 2008 to 2013 (the last complete year available) is attached as **Exhibit F.** As with the other lending entities, the consolidated income statement includes income and expenses not

directly related to consumer lending and therefore the gross profit of $3.2 million reflected on Exhibit E varies slightly from the $4 million reflected by Namakan's loan management software. Ultimately, Namakan reflects an aggregate net loss of nearly $800,000 from 2008 to 2013, largely as a result of Namakan's payment of nearly $80,000 in motor vehicle expenses, $86,000 in meals and entertainment, $3 million in management fees to affiliated entities, and nearly $600,000 in interest payments to investors.

    B.    **DNA/Rowland Entities:**

        1.    **Vandelier Group, LLC**

Vandelier Group, LLC operated as a lending entity between 2011 and 2013, with continuing collection and sales of previously-issued loans during 2014. Between 2011 and 2014, Vandelier issued $14.9 million in loans to 54,943 consumers and collected $23.4 million in fees, interest, and principal resulting in a gross profit of $8.5 million.

A copy of Vandelier's consolidated income statement for 2011 through 2014 is attached as **Exhibit G**. Although Vandelier reported a net loss of $1.5 million between 2011 and 2014, this was largely due to payment of $8.8 million in management fees to affiliated companies, including $4.2 million to Canyon Road Holdings, LLC from which Defendant Ted Rowland withdrew in excess of $3 million in owner distributions over the same time period.

When Defendant Ted Rowland closed Vandelier Group's operating bank account at Missouri Bank on October 15, 2013, he transferred the account balance of $52,199.11 to Canyon Road Holdings, LLC's bank account. Defendant Rowland also deposited

7
23770648v2
Case 4:14-cv-00783-DW   Document 158   Filed 05/20/15   Page 7 of 16

collections for Vandelier after October 15, 2013 into Canyon Road Holdings, LLC's bank account.

### 2. **St. Armands Group, LLC**

St. Armands Group LLC operated as a lending entity between 2011 and 2013 with continuing collection and sales of previously-issued loans in 2014. Between 2011 and 2014, St. Armands issued $16.3 million in loans to 60,870 consumers and collected $23.7 million in fees, interest, and principal for a gross profit of $7.4 million.

A copy of St. Armands Group's consolidated income statement is attached as **Exhibit H**. Although St. Armands Group reported a consolidated net loss of $1.1 million between 2011 and 2013, the net loss is due to $7.9 million in management fees paid to affiliated companies, including $2 million to Canyon Road Holdings, LLC from which Defendant Ted Rowland withdrew in excess of $3 million in owner distributions over the same time period.

When Defendant Ted Rowland closed St. Armands Group's operating bank account at Missouri Bank on October 15, 2013, he transferred the account balance of $52,660.29 to Canyon Road Holdings, LLC's bank account.

### 3. **Anasazi Group LLC**

Anasazi Group, LLC[1] operated as a lending entity between 2011 and 2014, with continuing collection and sales of previously-issued loans during 2014. Between 2011 and 2013, Anasazi issued $18.5 million in loans to 60,028 consumers and collected $26.1 million in fees, interest, and principal for a gross profit of $7.6 million.

---

[1] The Complaint initiating this action also named Anasazi Services, LLC as a defendant. Although Anasazi Services had a separate bank account for a period of time and, in general, paid the expenses of the Anasazi Group lending operations, the financial results were recorded solely under Anasazi Group account. Accordingly, there is no separate accounting of Anasazi Services in this report.

A copy of Anasazi's consolidated income statement is attached as **Exhibit I**. Although Anasazi Group reported a consolidated net loss of $2.78 million between 2011 and 2014, the net loss is due to $12 million in management fees paid to affiliated companies, including $3.4 million to Canyon Road Holdings, LLC from which Defendant Ted Rowland withdrew in excess of $3 million in owner distributions over the same time period.

When Defendant Ted Rowland closed Anasazi Group's operating bank account at Missouri Bank on October 15, 2013, he transferred the account balance of $52,256.12 to Canyon Road Holdings, LLC's bank account. Defendant Rowland also deposited collections for Anasazi Group after October 15, 2013 into Canyon Road Holdings, LLC's bank account.

### 4. **Longboat Group, LLC d/b/a Cutter Group**

Longboat Group, LLC d/b/a Cutter Group operated as a lending entity between 2011 and 2014, with continuing collection and sales of previously-issued loans during 2014. Between 2011 and 2013, Longboat issued $15.8 million in loans to 58,140 consumers and collected $25.2 million in fees, interest, and principal for a gross profit of $9.4 million.

A copy of Longboat Group's consolidated income statement is attached as **Exhibit J**. Although Longboat Group reported a consolidated net loss of $1.4 million between 2011 and 2014, the net loss is due to $8.5 million in management fees paid to affiliated companies, including $4 million to Canyon Road Holdings LLC from which Defendant Ted Rowland withdrew in excess of $3 million in owner distributions over the same time period.

When Defendant Ted Rowland closed Longboat Group's operating bank account at Missouri Bank on October 15, 2013, he transferred the account balance of $51,505.59 to Canyon Road Holdings, LLC's bank account. Defendant Rowland also deposited collections for Longboat Group after October 15, 2013 into Canyon Road Holdings, LLC's bank account.

### 5. Oread Group LLC d/b/a Mass Street Group

Oread Group, LLC d/b/a Mass St. Group operated as a lending entity between 2011 and 2014, with continuing collection and sales of previously-issued loans during 2014. Between 2011 and 2013, Oread issued $13.5 million in loans to 49,940 consumers and collected $20.4 million in fees, interest, and principal for a gross profit of $6.9 million.

A copy of Oread Group's consolidated income statement is attached as **Exhibit K**. Although Oread Group reported a consolidated net loss of $1.7 million between 2011 and 2014, the net loss is due to $6 million in management fees paid to affiliated companies, including $2.7 million to Canyon Road Holdings, LLC from which Defendant Ted Rowland withdrew in excess of $3 million in owner distributions over the same time period.

When Defendant Ted Rowland closed Oread Group's operating bank account at Missouri Bank on October 15, 2013, he transferred the account balance of $52,217.08 to Canyon Road Holdings, LLC's bank account. Defendant Rowland also deposited collections for Oread Group after October 15, 2013 into Canyon Road Holdings, LLC's bank account.

### 6. Canyon Road Holdings LLC

Although Canyon Road Holdings, LLC was not named as a defendant in this case, both the TRO and PI Order define Receivership Defendants as other entities owned or controlled in whole or in part by defendants Coppinger and Rowland. Canyon Road, which is owned 33.3% by Rowland and 66.7% by DNA Investments LLC (which is wholly owned by David Harbour) was a pass-through entity. Investors "loaned" funds to Canyon Road at interest rates ranging from 18 to 30 percent. The investment was often documented by an alleged promissory note. Some of the more aggressive investors even obtained purported personal guarantees and took security interests in assets Harbour purchased with proceeds from the "profits" Rowland and Harbour extracted from Canyon Road.

Canyon Road, whose bank account was controlled by Rowland, regularly transferred consumer payments from the lending entity on to DNA Investments and then on to investors and owners Rowland and Harbour, purportedly as "management fees," even though Canyon Road was merely an intermediary between the investors and the lending entities.

A copy of Canyon Road's consolidated income statement is attached hereto as **Exhibit L**. Canyon Road's $19.5 million in revenue between 2011 and 2014 was from supposed "management fees" collected from the lending entities. Canyon Road recorded $13.3 million in expenses during this period with the vast majority of the expenses being paid to Canyon Road's investors ($9 million) and management fees to affiliated entities ($4.3 million). In addition to the expenses reported, Defendant Rowland withdrew $3 million in owner distributions and non-defendants/third-parties DNA Investments and David & Abby Harbour withdrew $6.6 million in owner distributions during this period.

### 7. **Huskhawk Investment Group, LLC**

Huskhawk Investment Group, LLC was not named as a defendant in this case. Hushhawk was owned 50/50 by defendant Rowland and his former business partner Randy Fricke. Huskhawk operated much like Canyon Road, but for Rowland's first generation of lending entities which were not named as defendants in this case. The Receiver identified Huskhawk as an additional defendant that met the TRO and PI Order's definition of defendants because it was owned and controlled in part by Defendant Rowland and supported the consumer payday lending operations.

A consolidated income statement for Huskhawk reflecting revenue and expenses for 2007 through 2014 is attached hereto as **Exhibit M**. As reflected on Exhibit M, Hushawk's revenue in excess of $4 million between 2007 and 2014 was derived from fees paid by the first generation of the Rowland lending entities. Huskhawk's expenses for 2007 to 2014 were primarily payment of "leads" or potential consumer borrowers and repayment to the investors and management fees to related entities. In addition, the Receiver has reviewed Huskhawk's bank statements and identified in excess of $1.7 million in owner distributions, loans, and other transfers made to Rowland and Fricke between 2007 and 2014. The Receiver has further identified in excess of $1.3 million in net profits paid to investors by Huskhawk between 2007 and 2013.

### 8. **Incrementum Investment Group, LLC**

Incrementum Investment Group, LLC was not named as a defendant in this case, but the Receiver identified Incrementum as an additional defendant that met the TRO and PI Order's definition of defendants because it was owned and controlled in part by Defendant Rowland. Incrementum's primary purpose was to raise capital from investors

to fund the consumer payday loans made by the first generation of consumer lending entities organized or controlled by Defendant Rowland.

A consolidated income statement for Incrementum reflecting revenue and expenses for 2009 through 2014 is attached hereto as **Exhibit N**. As reflected on Exhibit N, Incrementum's revenue in excess of $4 million between 2009 and 2014 was derived from fees paid by the first generation of the Rowland lending entities and its expenses for 2009 to 2014 were primarily payment of "leads" or potential consumer borrowers and repayment to the investors and management fees to related entities.

### III. Claims Against Third Parties

The Receiver and his team have conducted an extensive investigation into the ultimate recipients of the profits of the Receivership Defendants and individual Defendants. This process involved review and analysis of thousands of pages of bank statements and financial statements. The process is on-going. However, the Receiver has identified in excess of $15 million in net transfers to investors and insiders of the Rowland entities and in excess of $4.5 million transferred to investors and insiders of the Coppinger entities.

As of the filing of this quarterly report, the Receiver has collected $723,071 in settlements from third parties and is evaluating additional recovery settlements and litigation. The Receiver has filed a turnover action against DNA/Harbours seeking the return of $6.6 million and the parties have engaged in settlement discussions regarding the pending action. The Receiver anticipates additional settlements or turnover proceedings being filed this quarter.

13
23770648v2
Case 4:14-cv-00783-DW   Document 158   Filed 05/20/15   Page 13 of 16

**IV.     Debt Collectors**

The FTC has notified the Receiver and his counsel of numerous third-party debt collectors threatening imprisonment and other actions if the consumers do not pay amounts allegedly owed to the Receivership Defendants.  Many of these debt collectors use non-existent PO Boxes and change phone numbers regularly.  In many cases, it isn't clear whether the third-party debt collectors actually purchased consumer loans from Receivership Defendants or are simply fraudulently asserting a debt is owed.  In some cases, the consumer claims the original loan was previously paid in full.

In an attempt to stop this activity, the Receiver and his counsel send "cease and desist" letters with a copy of the PI Order to the third-party debt collectors in an attempt to stop this activity.  The Receiver has also directed all third-party debt collectors used by the Receivership Defendants to stop all collection activity.

**V.     Financial Status**

As of the filing of this Quarterly Report, the Receivership Estate Bank Account has a balance of $435,477.72.  This reflects deposits since the last report as follows:

| Date | Purpose | Amount |
| --- | --- | --- |
| 2/3/2015 | Refund of Paycor final payroll and W-2 preparation overpayment | $214.76 |
| 4/16/2015 | Partial Refund of Bank Fees | $15.00 |
|  | **Total** | **$229.76** |

The current balance reflects expenses paid since the filing of the last report as follows:

| Date | Purpose | Amount |
| --- | --- | --- |
| 1/27/2015 | Receiver's CPA Fees | $464.00 |
| 1/30/2015 | Receiver's CPA Fees | $524.00 |
| 2/13/15 | Deposition Transcript | $339.10 |

| | | |
|---|---|---|
| 2/17/15 | Receiver's CPA Fes | $1,664.00 |
| 2/17/15 | R. Harsh—Consultant—eFunds data | $1,480.00 |
| 2/20/15 | Deposition Transcript | $353.10 |
| 3/24/15 | Receiver's CPA Fees | $856.00 |
| 3/26/15 | ProShred-final fees for Squibb Road | $60.00 |
| 4/9/15 | MO Dept. Rev.—T. Coppinger Personal Taxes per Court Order | $34,940.00 |
| | **Total** | **$40,695.20** |

The last report balance of $475,928.16 plus deposits of $229.76 less expenses of $40,695.20 results in current balance of $435,477.72. This amount reflects only the corporate entity defendant funds and does not include additional funds frozen by the FTC held in the individual defendants' accounts. In addition to these amounts, the Receiver has collected $723,071 in settlements from investors which is being held in trust and not reported as an estate asset pending approval of settlement terms which will be addressed in filing contemporaneous with this Status Report.

## VI.  Receiver's Next Steps

In addition to pursing recovery of estate assets, which could not be accomplished until the accounting of the receivership defendant corporate entities financial transactions was complete, one of the Receiver's tasks for the next quarter is to complete all corporate entity tax returns. Historically, the corporate defendants in this case sought and obtained every possible extension for filing tax returns. The corporate accounting was far behind when this case commenced. The Receiver and his team have sought and obtained further

extensions to complete the tax returns and anticipate completing same and closing out the corporate tax accounts in the next quarter.

Dated: May 20, 2015.

>Respectfully submitted,
>
>LATHROP & GAGE LLP
>
>By: /s/ *Brian M. Holland*
>Brian M. Holland  MO # 51307
>2345 Grand Blvd, Suite 2400
>Kansas City, MO 64108
>Telephone: 816.292.2000
>Telecopier: 816.292.2001
>Email: bholland@lathropgage.com
>
>Attorneys for Larry E. Cook,
>Receiver

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2015, I electronically filed the foregoing document, with the Clerk of the Court for the Western District of Missouri by using the CM/ECF system which will send a notice of electronic filing to all parties participating in the Court's CM/ECF system.

>/s/ *Brian M. Holland*
>An Attorney for Larry E. Cook,
>Receiver